IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMIAN SCHWARTZMAN, in his capacity as Receiver for the Receivership Estate established by the Order entered September 13, 2010 in *SEC v. Robert Stinson, Jr., et al.*, Civil Action No. 10-03130,<br>        Plaintiff,<br><br>        v.<br><br>SIERRA CAPITAL RESOURCES, LLC, and MICHAEL P. MCNAMARA,<br>        Defendants. | CIVIL ACTION<br><br><br><br><br><br><br><br><br>No. 11-7395 |

## MEMORANDUM

**Schiller, J.**                                          **October 31, 2012**

Kamian Schwartzman, in his capacity as Receiver for the receivership estate established by the Court in *SEC v. Stinson*, Civ. A. No. 10-3130, brings this action to recover stolen funds received by Sierra Capital Resources, LLC ("Sierra") and its sole shareholder Michael P. McNamara. Currently before the Court is the Receiver's unopposed motion for summary judgment. For the following reasons, the motion is granted.

**I.      BACKGROUND**

The Receiver filed this action on November 30, 2011, alleging that Sierra and McNamara received stolen funds that originated from a Ponzi scheme perpetrated by Robert Stinson, Jr. McNamara is the sole member of Sierra, a Colorado limited liability company. (Pl.'s Statement of Undisputed Material Facts [Pl.'s SOF] ¶¶ 12-13.)

The Court addressed the mechanics of the Stinson Ponzi scheme in a related case, *SEC v. Stinson*, Civ. A. No. 10-3130, 2011 WL 2462038, at *3-5 (E.D. Pa. June 20, 2011). In brief, Stinson

and the Life's Good funds ("Life's Good") he controlled obtained over $17 million from at least 262 investors. *Id.* at *1. Following an SEC investigation and civil enforcement action, the Court appointed the Receiver to recover investor funds lost in Stinson's scheme. *See id.* at *2.

The Receiver has traced $260,135.00 obtained through the Ponzi scheme and received by Sierra or McNamara.[1] (Pl.'s SOF ¶ 7; Pl.'s Mot. Summ. J. Ex. A [Summ. of Accounts] & E [Wire Transfer Archives].) McNamara wrote himself checks from the Sierra bank account that totaled at least $143,713.00. (Pl.'s SOF ¶ 7; Pl.'s Mot. Summ. J. Ex. F [Photocopies of Checks].) The Complaint sets forth three claims against Defendants: (1) avoidance of fraudulent transfers; (2) unjust enrichment; and (3) equitable accounting. On January 23, 2012, McNamara filed a pro se Answer. The Answer admitted two allegations in the Complaint: (1) "McNamara is an adult individual who resides at 1750 East Cedar Avenue, Denver, CO 80209, and is the *alter ego* of Sierra Capital"; and (2) "The $260,135.00 from Life's Good, Inc. and the Life's Good Funds was wired to an account at FirstBank of Colorado titled in the name of Sierra Capital and over which McNamara had sole signatory authority." (Pl.'s Mot. Summ. J. Ex. B [Def.'s Answer] ¶¶ 13, 19.)

Sierra failed to answer the Complaint or otherwise appear. As a result, on May 29, 2012, the Receiver requested an entry of default and the Clerk entered the default against Sierra. Also on May 29, 2012, the Receiver served Defendants with requests for admission, interrogatories, and a request for production of documents. (Pl.'s SOF ¶ 17; Pl.'s Mot. Summ. J. Ex. H [Discovery Letter].) To date, neither Defendant has responded to the Receiver's discovery requests. On October 4, 2012, the

---

[1] The Receiver's filings occasionally claim that Sierra received $260,235.00 rather than $260,135.00 from Life's Good. (Pl.'s SOF ¶¶ 16, 23.) However, the evidence provided by the Receiver clarifies that Sierra received $260,135.00 from Life's Good. (Pl.'s Mot. Summ. J. Ex. A & E.)

Receiver filed this motion for summary judgment. To date, neither Defendant has responded to the motion for summary judgment.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). If the moving party has satisfied its initial burden, the nonmoving party must identify evidence that creates a genuine issue of material fact. *Player v. Motiva Enters.*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). The court may not make credibility determinations or weigh the evidence in considering motions for summary judgment. *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

A court may not grant as uncontested a motion for summary judgment. E.D. Pa. Loc. R. Civ. P. 7.1(c). Instead, the Court must find that summary judgment is appropriate under Fed. R. Civ. P. 56(c) "by determining that the facts specified in or [in] connection with the motion entitle the moving party to judgment as a matter of law." *Hitchens v. Cnty. of Montgomery*, 98 F. App'x 106, 110 (3d Cir. 2004). The facts examined by the court may include matters covered in requests for admission where defendants failed to respond, since such matters are deemed to be admitted by non-responding parties. *See* Fed. R. Civ. P. 36(a)(3). The Third Circuit has "long recognized that deemed

admissions are sufficient to support orders of summary judgment." *Kelvin Cryosystems, Inc. v. Lightnin*, 252 F. App'x 469, 472 (3d Cir. 2007).

### III.   DISCUSSION

#### A.   Defendants Fraudulently Transferred Funds

The Receiver brings his fraudulent transfer claims under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). The statute defines a "transfer" as "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset. The term includes payment of money, release, lease and creation of a lien or other encumbrance." 12 Pa. Cons. Stat. § 5101(b). A transfer is "fraudulent" as to present or future creditors if the debtor made the transfer: (1) "with actual intent to hinder, delay or defraud any creditor of the debtor"; or (2) "without receiving a reasonably equivalent value in exchange for the transfer or obligation." *Id.* § 5104(a). "The first provision [of § 5104(a)] provides for liability under an actual intent theory of fraud, while the second is a constructive fraud provision." *In re Blatstein*, 192 F.3d 88, 96 (3d Cir. 1999) (internal quotation marks omitted). Once a creditor has established fraudulent intent, it may avoid the transfer, attach the transferred asset or other property of the transferee, obtain an injunction against future transfers, or seek appointment of a receiver. 12 Pa. Cons. Stat. § 5107.

"[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 400-01 (E.D. Pa. 2010) (quoting *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)); *see also Wing v. Dockstader*, Civ. A. No. 11-4006, 2012 WL 2020666, at *2 (10th Cir. June 6, 2012) ("[O]nce it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent."). Because the Receiver has

established the existence of a Ponzi scheme and the transferor of the funds, Life's Good, was used to further that Ponzi scheme, the Court finds that the Receiver has established fraudulent intent. *See SEC v. Stinson*, 2011 WL 2462038, at *1, 5.

Relief may still be denied, though, if the transferee can establish as an affirmative defense that he "took [the money] in good faith and for a reasonably equivalent value." 12 Pa. Cons. Stat. § 5108(a); *see also* § 5108 Committee Cmt. 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged."). However, Defendants have not pled any affirmative defense or alleged that they took the money "in good faith and for a reasonably equivalent value." *See* 12 Pa. Cons. Stat. § 5108(a)**.** In fact, through the Receiver's requests for admission, Defendants have admitted that they "did not provide any service" in exchange for the $260,135.00. (*See* Pl.'s Mot. for Summ. J. Ex. I [Receiver's First Set of Reqs. for Admis.] ¶ 1.) Thus, the Receiver succeeds on his fraudulent transfer claim against Defendants.

**B.     McNamara Is Alter Ego of Sierra Capital**

In order to recover the full $260,135.00 against McNamara, the Receiver asks the Court to pierce Sierra's corporate veil, arguing that Sierra is an alter ego of McNamara. The Court agrees. When deciding whether a company is a mere alter ego, courts examine such factors as: failure to observe corporate formalities, siphoning of funds from the debtor corporation by the dominant stockholder, and whether the corporation is merely a facade for the operations of a dominant stockholder. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001); *Martin v. Freeman*, 272 P.3d 1182, 1184-85 (Colo. Ct. App. 2012). The alter ego test "is demonstrably an inquiry into whether the debtor corporation is little more than a legal fiction." *Pearson*, 247 F.3d at

485; *see also Swinerton Builders v. Nassi*, 272 P.3d 1174, 1177 (Colo. Ct. App. 2012). "[T]he appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967); *see also Ward v. Cooper*, 685 P.2d 1382, 1384 (Colo. Ct. App. 1984).

It is clear that Sierra was an alter ego that McNamara used to funnel funds obtained through Stinson's Ponzi scheme for personal use. McNamara is the founder and sole member of Sierra, as well as the sole signatory on Sierra's bank account. (Def.'s Answer ¶ 19; Pl.'s SOF ¶¶ 12-13.) In his Answer, and through his failure to respond to the Receiver's requests for admission, McNamara admitted that Sierra operated only as a conduit for McNamara's personal assets. (Receiver's First Set of Reqs. for Admis. ¶ 18; Def.'s Answer ¶ 13.) Likewise, McNamara admitted that he used Sierra's bank accounts to pay his own personal expenses, including his personal mortgage payments, payments to his family members, and personal credit card bills. (*See* Receiver's First Set of Reqs. for Admis. ¶¶ 2-8.) Similarly, on multiple occasions he wrote checks from the Sierra account to himself without providing anything to Sierra in return. (*Id.* ¶¶ 9-16.)

Piercing the corporate veil would also "prevent fraud, illegality, or injustice." *See Zubik*, 384 F.2d at 272. The Receiver is bringing claims against Sierra and McNamara in order to recover funds illegally obtained pursuant to a Ponzi scheme, so that it can fairly distribute such funds among all the defrauded investors. McNamara should not be allowed to reap the benefits of that Ponzi scheme, to the detriment of hundreds of defrauded investors, by improperly transferring money from his alter ego company to his personal account.

**IV.     CONCLUSION**

The Court finds that no genuine factual issue exists as to the Receiver's fraudulent transfer claims, and will therefore grant his motion for summary judgment on those claims. It is not necessary for the Court to reach the Receiver's unjust enrichment and equitable accounting claims because he is entitled to the relief he seeks based on the fraudulent transfer claims alone. The Court will also pierce the corporate veil so that any judgment against Sierra may be fulfilled against McNamara. An Order consistent with this Memorandum will be docketed separately.